Case number 16-3043. Christina Saunders v. Procter & Gamble Health and Long-Term Disability Benefit Plan. Our team has with us today Mr. Mary and Mr. Jacob. Thank you. May it please the court, good morning. My name is Tony Mary representing the plaintiff and appellate in this case. I'd like to reserve three minutes for rebuttal. I'd like to briefly hit three points. The first point being the standard of review, second point being the concept of objective evidence, and the third point, time permitting, being Dr. Long's July 2013 report. The standard of review turns on whether or not the court authorizes or recognizes the plan administrator's right to pull in the summary plan description by the corporation. The courts that have wrestled with the risk of cases over the past 15 or 20 years, up until the Amera decision, have had to deal with claims about whether the summary plan description gives a private right of action, what if it's contrary to the plan, what if the plan is silent on an issue, and we've got this whole series of litigation that I think the Supreme Court pretty much cleared up in the Amera case. The Supreme Court says very clearly that there's a plan document and a summary plan description, and I quote the Amera case on page 8 of my brief where the Supreme Court says we've got no reason to believe that Congress ever intended to mix the two. But the plan document can incorporate other documents. Correct, I wouldn't categorically rule that out, but I think there's a fundamental problem in the case of incorporating a summary plan description, and I would draw that distinction because a plan document is a settler function. No fiduciary responsibility attaches to whatever you put in the plan. An SPD is prepared by a fiduciary. It carries fiduciary liability. So you have a question, let's say that the plan says you get benefit stage 65, and the summary plan description, or perhaps because this incorporates enrollment materials. Perhaps a letter from the Department of Human Resources that says you get benefit stage 67. Well, does the summary plan description amend the plan? Is there a breach? I mean, what are you dealing with here? Can it amend the plan as long as there's some method in the plan for resolving any disputes or any conflicts? If there's no conflict between the documents, it can be incorporated at least. I would go with caution on that. I'm not here arguing for a blanket rule. I can imagine a plan that's so simple that what's the point of having a plan and a summary plan description? I'd also add if you look at the 400 pages of plan documents we got here, this isn't it. But I'm not arguing for a hard and fast rule. But because of the fiduciary nature of the communication aspect of it, the fact that ERISA separates the two, the fact that the Supreme Court told us twice, the first time in the Curtis Wright case. And what the court was worried about in Curtis Wright was who has the authority to amend the plan? So if you've got a plan administrator that issues a summary plan description that's not quite in accord with what the plan says, has the plan been amended? That was kind of the issue in the Curtis Wright case. I started out my world drafting plans. And I remember we, it's a problem when you say that the summary plan description can supersede the plan. Because you're supposed to put it in plain, simple language. Supersede implies a conflict. Incorporation doesn't really. Oh, I agree with that. I agree with that. But what happens if you've incorporated a document where there's a conflict? Yeah, I mean that, I get your point. Plus, I still say you can incorporate a whole lot of other documents. But if you're going to incorporate summary plan descriptions or fiduciary communications like enrollment materials, that's a big can of worms. In Moore, we said you could do that. I mean, we said when a plan document expressly incorporates an SPD, and there's adding a couple words here, that SPD creates enforceable rights and duties. I think Moore's distinguishable on a couple of points. First of all, my understanding It might be factually, but we did say that legal proposition, right? I mean, isn't that did Moore quite that closely? My understanding of what Moore held was there was a trust agreement. And then there was this other document that was labeled a summary plan description. But there was no other document in existence. Everybody agreed that the SPD more or less laid out what the terms of the plan were. I think you could have reached the same conclusion, and I still want to make one other distinguishing point. I think you could have gotten there by saying, even though this is labeled summary plan description, the label doesn't matter. It's really the plan. I think that is one distinction. I think secondly, you can say, because I believe the Firestone case way back in the 80s, I think that was originally, if I remember right, an unwritten plan. So I think you could say, the summary plan description represents the evidence of what the plan is. But my point is, I mean, Moore does not have an incorporation expressly of an SPD, right? Correct. But the Moore opinion says, if you do, then the incorporation is effective. That seems to be a straightforward reading of what they said. I'm not going to disagree with you about what it says, but I would say in that case it's dicta. Well, okay, it's dicta, but you know. The other distinction, if I can, in the Moore case, is it was a multi-employer plan. If I recall correctly, a multi-employer plan where you've got trustees, and trustees in a multi-employer plan, they exercise settlor functions and they exercise fiduciary functions. So you've got a really different creature there anyway. Why does that matter for purposes of whether you can incorporate an SPD? Well, I think it's a reason, I think it's a distinction in the case that, I think it's a distinction that helps understand why there were only the two documents. And once again, I'll just, I don't think Moore binds this court. I understand, but I mean, here we do have sort of the T's crossed in the sense of the plan itself expressly references this. I mean, I understand why this is important to you. I mean, it's a standard of review, ultimately, that's at issue here, and that's pretty important. Yes, although might I say that I don't think our case rises or falls on the standard of review, because I think there was abusive discretion here, and I'm perfectly happy to go that way. As an ERISA practitioner, I'm really concerned about what this court says about incorporation of SPDs, because- What do you think should come out, just with respect to your point one about the standard, about whether the SPD is incorporated and in the case, which is our case, where there's a conflict between the plan and the SPD, what should the rule be? In my view, where you've got a plan document, and actually we have two plan documents. We've got a wraparound plan document, and then we've got another plan document. I think the court should hold that incorporation of summary plan descriptions and enrollment materials is improper and should not recognize it. Why does everything have, I mean, it's because of the different sort of capacities in which one writes these different documents? Correct, correct, because one's a fiduciary document, and I think the Supreme Court's spoken fairly clearly on that point. Which case in particular? I think the Curtis Wright case from the 90s, and then the Amera case in the more recent past. I mean, the Curtis Wright case went up on an issue about whether or not the language in the summary plan description was enforceable, and the decision was remanded for a determination of whether the people that wrote the summary plan description had authority to amend the plan. Okay. And then Amera flatly rejected enforcement of the SPD. You might want to talk about, you know, the- Merits? Yeah, the merits, and I guess they're just, it's not really a question, it's just something for you to consider when you talk, is it seems like she has a couple of retreaters who just refuse to recognize any limitations on her ability to work, and so it would be helpful if you kind of addressed that as part of whatever you choose to do. Sure, and I'd be happy to start with that. As you answer that, can you fold in whether she was exclusively seeking total disability, or whether partial disability was something that she was seeking? Because the plan rejects both a claim for partial and total disability, but I didn't see where she ever requested partial disability. No, she was, this is a total disability case. Exclusively, okay. She's claiming to be totally disabled by her medical condition. And I think she has 11 treaters saying, who do not put her off work. Well, correct, but on the question of off work, and I talked about this in the brief, no one asked after December of 2012, and I think it matters here that she handled the appeal herself. I would hate to see a decision that basically says every person who handles their own appeal is a fool. The argument could be made, but I mean, had she been represented, the evidence would have come in differently. You're running out of time. I know. I'm anxious to hear, kind of from the top, your explanation of why the medical records here just show to the extent. The decision was, the denial was based on a lack of objective evidence. It was not based upon nobody's taking her off. The two written decisions were there's no objective evidence. My response to that is there's objective evidence all over the place, number one. Number two, the read group, if you read the read group's summaries all the way through, they say subjective evidence, da-da-da-da-da, objective evidence. The QSART test, the in-office medical evaluation, everything. There's subjective evidence all over the place. Dr. Kelly, the doctor that saw her last, said clearly and unequivocally, she can't work. Because the pain is incapacitating. No doctor ever doubted the pain. No doctor, except for Dr. Long, ever said no restrictions. Well, no, there was the other treater. There were two treaters that said that. There might have been one back in 2012, but the plan, I mean, he talked a lot about the old doctors, Heil and somebody else. The claim was approved. You can't start a new argument here. You can't say Dr. Heil really said that she wasn't disabled because that wasn't the reason. The reason was no objective evidence. And our position is we got objective evidence all over the place. And I'm out of time. Thank you, Your Honor. I'll be back. Okay. Thank you. Your Honors, Jack Fuchs on behalf of the Procter & Gamble Health and Disability Plan. Let me first address the issue that Mr. Mary raised as to the incorporation of the plan document of SPDs and other documents. This is a situation where, first of all, with respect to Curtis Wright, which I want to talk a little bit about. Curtis Wright appears for the first time in the reply brief of the appellant. It's not in the principal brief of the appellant. It's never raised in the district court. Our position is that the district court quite appropriately addressed every question that was raised in the district court. The incorporation by reference argument is, with respect to Curtis Wright, completely inappropriate in the reply brief. It's waived. I submitted a supplemental authority. How does that, the Curtis Wright aspect, differ from the other aspects that were . . . Curtis Wright, Your Honor, actually is supposed to be addressing the question of whether or not there is the authority of an individual from a . . . When one wears two hats and what . . . The different capacities. The different capacities. Can you have the same entity wearing two hats? And the answer is yes. The drafting of an SPD may be a fiduciary function. The incorporation of that SPD into a plan document is a settler function. The fact that you send that SPD on to a communication goes to a participant or beneficiary. That is a fiduciary function. There is nothing that precludes the two from occurring. The point you're making right now, or just a moment ago, is the specific objection that you cannot . . . Yes. That specific argument is one that you say was not presented to the district court, not presented until the reply brief. That is correct, Your Honor. I just wanted to understand. As a matter of fact, if it . . . The district court addressed it. It actually addressed a different argument, which is can you incorporate an SPD? The argument as to capacity was never presented before. And Curtis Wright actually is a critical document. I like Curtis Wright. Curtis Wright at 514 U.S. Ed. 85 says, quote, Arisa dictates only whatever level of specificity a company ultimately chooses in an amendment procedure or elsewhere. It is bound to that level. Well, we didn't have the opportunity to tell the court about plan document section 14.1A, which is the amendment provision. And that provision says, quote, The company shall have the right to amend, modify, suspend, or terminate each plan to any extent and in any manner that it may deem advisable at any time or times. That's at page ID 240. Why is that relevant? It says that any part of the company can, in any way it wants, amend the plan document. It doesn't do a restrictive approach that Mr. Mary is asking you to do. We didn't have the opportunity to raise all of the cases that we might as to incorporation. But we did cite the Moore case. It quotes from the First Circuit's TreadAllow case. TreadAllow is a use of very straightforward. It's my firm that wrote the plan document and the SPDs that are incorporated therein. It's for the limited company up in Columbus. That is a situation where the plan document, like this one, says we are incorporating SPDs. Now, in point of fact, could you include plan applications and all these other things? You can include anything you darn well want to. Does this plan document do that? The answer is no. It actually has a schedule that lists each of the documents that are to be incorporated. And what the First Circuit said was Cigna doesn't have any restriction on that. Because Cigna involved a case that went up in the Second Circuit where a district court found that there had been a violation of fiduciary duty, straight-up misrepresentation as to what certain pension benefits would be when they went from a traditional pension plan to what's called a cash balance plan, where you start with a lump sum and you get dollars out of it. The district court crafted a summary judgment motion based on newsletters and an SPD and said the newsletters and the SPD that contained the misrepresentations weren't enforceable under 502A1B of ERISA, which is 29 U.S.C. 1132A1B. What it then went on in Justice Breyer's opinion to say was that means that we look at what? A3. Can you look at A3 to see if there can be a reformation of the contract based on the misrepresentations? And then the court said, well, we can do a reformation and then once the plan is reformed, you can enforce the plan document as reformed under A1B. There is no suggestion here that we can't have reformation. There isn't an A3 claim. This is a simple claim for benefits. Let me say a couple of other things. Curtis Wright references plan documents. Doesn't say you can't incorporate. Where does it say that? It's 514 U.S. 73 at page 83. It says a written plan is required in order that every employee may, on examining the plan documents, plural, determine exactly what his rights and obligations are under the plan. Courts, we didn't cite the First Circuit. Obviously, we did. We say more controls. The Seventh Circuit in 689 F3, 726 Asherman v. Etna Life. Unless there's going to be an exam on this stuff later, can we talk a little bit about the merits? Yes, Your Honor. This is really one of the few cases that I've ever seen where we don't have a Social Security disability determination that conflicts. Judge Kethledge in your Fura case, which Brother Mary cites too. You make a big deal about that. You say where there's a Social Security disability determination, that's one of the factors to look at whether you should have an FCE, some kind of independent exam. Well, this is one of the really crazy cases where you have an entity, the Reed Group, that says, hey, we're going to recommend disability, even though no doctor says that. And when I say that no doctor says that prior to Dr. Kelly on appeal, we're really looking at a situation where the person who actually performs the surgery on the ectopic pregnancy releases her to return to work at the end of April of 2012. Yeah, so which doctor was that again? All right, that's all right. I apologize, Your Honor, that is not one of the ones that I identified. We relied because the plan trustees relied on Dr. Long's, Dr. Jadid's, Dr. Heil's opinions, all of which said no restrictions, no limitations. When you say no objective evidence, I assume you're not saying there's no objective evidence that Ms. Saunders is actually in some serious pain, right? It's no objective evidence of occupational limitations? That is correct, Your Honor. There's no objective evidence of any restriction or limitation that precludes her from performing her sedentary position as a public relations manager at Procter & Gamble. So the implication would be, notwithstanding the seriousness of the pain, she could bear it or be medicated or something while she's working? Yeah, and this actually, although neither side really spent a great deal of time arguing the point, the definition of total disability that Judge Levy raised initially is a truly high level. I mean, it normally, well, quote, usually total disability involves a condition of such severity as to require care in a hospital or a restriction to the immediate confines of the home. There's no suggestion of anything nearly as restrictive as that. There is no question. I'm here to find, for all the reasons, for the part of the discussion that we've now moved beyond, that this should have been a de novo review and not arbitrary and capricious. Would the case need to be remanded for the district court to make that determination, and you'd make your argument there? The court would have the discretion to do that. But as page 29 of Appellant's brief makes very clear, you actually apply the same standard of review on appeal as the district court does down below. And so, therefore, you can actually make your own decision and reach a conclusion on a, whether it's called de novo or first impression review, can do that. And quite honestly, Judges Batchelder and Kethledge, in a prior Procter & Gamble disability case where there was alleged to have been some misconduct in the administration of the appeals process, I don't know what it was, and I wasn't counsel. But from Judge Weber's decision for the plan, you actually affirmed on a de novo standard in favor of P&G back in 2009. It doesn't have anything that's particularly informative for this case, and so I don't think I cite it. It is a situation where you could actually make that determination. This is a case where we really believe that it's clear that you can incorporate by reference. I was going to mention, if you were to hold as Mr. Mary actually proposes, you would undo what most benefit plans do, which is use a general document that incorporates, at least in welfare plans. I won't say that that's true in pension plans. But in welfare plans, you bring in a lot of different benefits. Health benefits, which is here. Long-term disability benefits, which is here. Short-term disability benefits that are here. We didn't make this point, but there is, in fact, in the Form 5500, which the Department of Labor issues and which all pension and welfare plans have to file, at least if they're of enough size, there's a requirement that those plans can, on page 7 of the instructions to the Form 5500-2015, talks about wrapped documents and how you can actually go and do that. It would undermine that kind of situation. I said it was page 7. I apologize. On the webpage, it's page 17. It gives instructions for lines 5 and 6 of the Form 5500. This is a significant issue with respect to how we go about doing business. And to do otherwise, actually, the Seventh Circuit's decision that I cited as part of my lengthy or attempted lengthy recitation of all the case law that goes our way. And I'm unaware of any case that goes against us on the incorporation of a plan document where there is an express incorporation provision. And all of those cases say where there is an express incorporation agreement and there's a conflict between the plan and the SPD. What do they all say? They all say that there is no conflict because the plan document incorporates the SPD. And here there isn't a conflict. I want to address the suggestion that in the base document, when you look at paragraph 814, it talks about plan administrators. It's not a singular. It really isn't a singular. And what you actually need to do is to take a look at what plan administrator means. A plan administrator does a variety of things. You need a named plan administrator set forth in the SPD for the purpose of asking for documents. ERISA 104, which is 29 U.S.C. 1024, says you have to get documents. You have a right as a plan participant or beneficiary to ask in writing that a plan document, an SPD, a form 5500, the most recent if it's a pension plan annual statement, if there is a trust, a trust agreement, if there's a collectively bargained benefit. And about the conflict part. And then that's what that says. It doesn't say that you can't have claims administrators and plan administrators. And when you go to the SPD, it identifies that the plan administrator is one entity, and it says for appeals, and we cite this in our brief in opposition, and it doesn't appear in either the brief on appeal or the reply brief, that, oh gosh, by golly, it's the Board of Trustees who have the discretion to decide appeals on benefits claims of long-term disability claims. That is the claim at issue here. There isn't a conflict. It would actually be the narrow controls, the general, even if you were to think otherwise. My time is up. I appreciate the court's attention. Thank you. Thank you again, Your Honor. And as much as I'm tempted to argue the standard of review, I'm not going to spend any time on it except to say they had the burden of proof to establish that the trustees had a clear grant of discretion, and they didn't make it. With respect to the objective evidence question, Judge Kethledge, you cast the issue as no objective evidence of occupational limitations. That certainly would have been a permissible interpretation of the plan language, but the plan never interpreted it that way. They never explained what they meant. All they said was objective evidence, and in the discussion of objective evidence, it was lab tests, medical tests, clinical notes, that sort of thing. So I grant you there are cases and there are plan documents that say objective evidence of occupational limitation. I got you with that. But that's not this case. That's not this plan. And nobody told Christine Saunders that's what she needed to have. All they said was no objective evidence. She's a young woman dealing with pain at home. She writes her own appeal. She says, I don't understand why everything that I sent before doesn't work now. The other thing missing from their argument this morning and from any of their briefs is what? What evidence? The letter did say objective medical records, clinical notes, testing results, but then this is important, to indicate she was disabled as defined by the plan. So I think it sounds more like Judge Ketledge's question, because those records weren't just supposed to be a quantitative record of how much pain or how much nerve impulse. It was actually supposed to indicate she was disabled under this definition of requiring care in a hospital and restriction to the immediate confines of the home. I think you and I can parse the sentence that way, Your Honor. I don't think it's fair for Christine Saunders. Okay. And the other, I mean, Arissa also says you have to tell them what evidence that you want. And I don't think telling them objective evidence is good enough. If they wanted her to- That didn't say objective evidence, period. It said objective evidence and then gave a bunch of indications of what that would be. Yes, Your Honor. Medical reports, she submitted. Lab reports, she submitted. She had the statement from Dr. Kelly that says she is too much pain to concentrate. Now, the plan didn't have to take that. Arissa doesn't say you've got to take the treating physician. But Arissa does say you've got to treat the evidence with respect. And by shipping the file off to a paid reviewer and coming back with a there's no objective evidence doesn't get there. With respect to the remedy, regardless of- That's what he might have been getting at. I mean, I have a lot of sympathy for your client. But I think what the reviewer might have been getting at is it's kind of conclusory from Dr. Kelly and the antecedent observations don't really support it in terms of her ability to, I think he used the word mentate or something like that. Well, I'm out of time, Your Honor. But mentation means she can answer questions. Okay, fine. He accepted that she could mentate, but he didn't accept the other- Doc gave a couple of opinions. One opinion was mentation clear. Another opinion, she can't work. Why does he get to pick one and not the other? They should have sent her for an evaluation. My time is way past. I thank you for your attention. Thank you. Thank you, counsel. The case will be submitted. There being nothing further to come before the court this morning, may I adjourn the court?